FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 04 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

THOMAS MWANGI

1:26CR346
Criminal Indictment

No. SEALED

THE GRAND JURY CHARGES THAT:

**Counts One and Two**
**(Bank Fraud—18 U.S.C. § 1344)**

1. Beginning on a date unknown but at least by in or about January 2023, and continuing through in or about October 2025, in the Northern District of Georgia and elsewhere, the defendant, THOMAS MWANGI, did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, First Financial Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of First Financial Bank.

**Background**

At all times relevant to this Indictment:

2. THOMAS MWANGI resided in the Northern District of Georgia. MWANGI owned and operated a manufacturing business in Cartersville, Georgia, in the Northern District of Georgia.

3. Sound Resource Solutions, LLC ("SRS") was a Texas company located in Shepherd, Texas.

4. R&F Industries ("R&F") was a Texas company located in Luling, Texas.

5. The Federal Deposit Insurance Corporation ("FDIC") was a federal agency that insured deposits of accountholders at member institutions.

6. First Financial Bank ("FFB") was a financial institution, headquartered in Abilene, Texas, whose deposits were insured by the FDIC.

7. Charles Schwab & Co., Inc. ("Charles Schwab") was a financial institution that issued investment accounts to customers. MWANGI solely owned a Charles Schwab investment account ending in 3542 ("the Schwab investment account" or "the investment account").

**Scheme and Artifice to Defraud**

8. Beginning on a date unknown but at least by in or about January 2023 and continuing through in or about October 2025, in the Northern District of Georgia and elsewhere, MWANGI engaged in a scheme to defraud FFB to fraudulently obtain financing to purchase SRS and R&F.

9. In or about December 2022, MWANGI met with FFB to seek financing to purchase SRS.

10. On or about January 30, 2023, FFB presented MWANGI with a commitment letter to finance MWANGI's purchase of SRS. Specifically, FFB agreed to loan MWANGI approximately $17 million to purchase SRS.

11. To approve financing for the purchase, FFB required MWANGI to pledge $3 million in collateral assets. MWANGI pledged his Schwab investment account as collateral.

12. FFB requested that MWANGI provide a recent financial statement from the Schwab investment account. In response, MWANGI knowingly emailed FFB a fabricated financial statement on or about February 27, 2023. The fabricated financial statement stated that the balance in the investment account was more than $10 million. The actual balance in the investment account, as MWANGI well knew at the time he emailed the fabricated financial statement, was less than $2 million.

13. Unaware of MWANGI's fraudulent misrepresentation and relying on the fabricated financial statement, FFB loaned MWANGI $17 million to purchase SRS. Had FFB known that MWANGI had falsified the financial statement, FFB would not have financed MWANGI's purchase of SRS.

14. As a condition of the loan, FFB required MWANGI to provide FFB with monthly statements from the Schwab investment account. MWANGI also agreed not to withdraw any funds from the Schwab investment account if the result decreased the value of the account under $3 million dollars. Further, FFB required a representative from Charles Schwab to sign an agreement that acknowledged FFB's security interest in the investment account.

15. Instead of obtaining an actual signed agreement from Charles Schwab as required by FFB, MWANGI presented FFB with an agreement that contained a

fraudulent signature from an individual falsely purporting to be a representative of Charles Schwab.

16. After he purchased SRS, MWANGI provided FFB with monthly statements from the Schwab investment account, as required by FFB. But these monthly financial statements, like the original financial statement MWANGI provided to FFB, were fraudulent and misrepresented the value of the funds in the investment account.

17. In or about September 2023, MWANGI sought financing from FFB to purchase a second company, R&F. FFB instructed MWANGI to provide an updated personal financial statement. In response, MWANGI knowingly emailed FFB a fraudulent personal financial statement on or about September 6, 2023. Specifically, the personal financial statement claimed the balance of the Schwab investment account was $14,179,077. The actual balance of the Schwab investment account, as MWANGI well knew at the time he emailed the fabricated personal financial statement, was less than $3 million.

18. On or about November 24, 2023, FFB presented MWANGI with a commitment letter agreeing to loan MWANGI $7 million to finance the purchase of R&F.

19. To approve the financing, FFB required MWANGI to pledge $6 million in collateral assets. As with the purchase of SRS, MWANGI pledged the Schwab investment account as collateral for the purchase of R&F.

20. Unaware of MWANGI's fraudulent misrepresentations and relying on the fabricated personal financial statement, FFB loaned MWANGI approximately $7

million to purchase R&F. If FFB had known that MWANGI had falsified his personal financial statement, FFB would not have financed MWANGI's purchase of R&F.

21. As a condition of this loan, MWANGI agreed to continue providing FFB with monthly statements from the Schwab investment account. MWANGI also agreed not to withdraw any funds from the Schwab investment account if the result decreased the value in the account under $6 million. Further, FFB required a representative from Charles Schwab to sign an amended agreement that acknowledged FFB's increased interest in the investment account.

22. As he had done with the SRS financing, MWANGI presented FFB with an agreement that contained a fraudulent signature from an individual falsely purporting to be a representative of Charles Schwab.

23. After he purchased R&F, MWANGI continued to provide FFB with fraudulent financial statements that misstated—and overvalued—the investment account. MWANGI knew the monthly financial statements sent to FFB were fraudulent and misrepresented the value of the funds in the investment account.

24. In furtherance of the scheme, MWANGI emailed fraudulent financial statements to FFB on at least 23 occasions.

25. In or about the summer of 2025, MWANGI defaulted on his loan payments to FFB. In response, FFB contacted Charles Schwab to confirm FFB's security interest in the investment account. Charles Schwab explained that the company was unaware of any security interest held by FFB in the investment account. Charles Schwab also found no evidence that an employee or representative

signed an agreement that acknowledged FFB's interest in the investment account.

26. In or about September 2025, FFB contacted MWANGI to further probe the investment account. MWANGI responded by knowingly emailing a letter to FFB in which he falsely claimed that the value of funds in the investment account was more than $22 million. The actual value of funds in the investment account, as MWANGI well knew at the time of sending the letter, was less than $1 million.

**Execution of the Scheme to Defraud**

27. On or about the dates set forth in the table below, in the Northern District of Georgia and elsewhere, the defendant, THOMAS MWANGI, did, with the intent to defraud, knowingly execute and attempt to execute the above-described scheme to defraud by emailing fraudulent financial statements and records to First Financial Bank, as shown below:

| Count | Date (on or about) | Execution of Scheme |
|---|---|---|
| 1 | 02/27/2023 | MWANGI emailed a fraudulent monthly financial statement to FFB to obtain financing to purchase SRS. |
| 2 | 09/26/2023 | MWANGI emailed a fraudulent personal financial statement to FFB to obtain financing to purchase R&F. |

All in violation of Title 18, United States Code, Section 1344.

**Counts Three through Fifteen**
**(Wire Fraud – 18 U.S.C. § 1343)**

28. The Grand Jury re-alleges and incorporates by reference the factual allegations set forth in paragraphs 2 through 26 as if fully set forth herein.

29. Beginning on a date unknown but at least by in or about January 2023, and continuing through in or about October 2025, in the Northern District of Georgia and elsewhere, the defendant, THOMAS MWANGI, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and for the purpose of executing the scheme and artifice to defraud, with the intent to defraud, caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds.

30. On or about the dates set forth in the following table, in the Northern District of Georgia and elsewhere, the defendant, THOMAS MWANGI, did, with the intent to defraud, for the purpose of executing the above-described scheme, cause to be transmitted by means of wire communications in interstate commerce the writings, signs, signals, pictures, and sounds described below:

| Count | Date (on or about) | Wire Communication |
|---|---|---|
| 3 | 05/01/2023 | Email from MWANGI to FFB attaching a fraudulent March 2023 financial statement. |

| Count | Date (on or about) | Wire Communication |
|---|---|---|
| 4 | 07/06/2023 | Email from MWANGI to FFB attaching a fraudulent May 2023 financial statement. |
| 5 | 08/07/2023 | Email from MWANGI to FFB attaching a fraudulent June 2023 financial statement. |
| 6 | 09/12/2023 | Email from MWANGI to FFB attaching a fraudulent July 2023 financial statement. |
| 7 | 10/16/2023 | Email from MWANGI to FFB attaching a fraudulent August 2023 financial statement. |
| 8 | 11/01/2023 | Email from MWANGI to FFB attaching a fraudulent September 2023 financial statement. |
| 9 | 03/19/2024 | Email from MWANGI to FFB attaching a fraudulent December 2023 and January 2024 financial statement. |
| 10 | 10/31/2024 | Email from MWANGI to FFB attaching a fraudulent September 2024 financial statement. |
| 11 | 12/24/2024 | Email from MWANGI to FFB attaching a fraudulent November 2024 financial statement. |
| 12 | 03/31/2025 | Email from MWANGI to FFB attaching a fraudulent February 2025 financial statement. |

| Count | Date (on or about) | Wire Communication |
|---|---|---|
| 13 | 08/11/2025 | Email from MWANGI to FFB attaching a fraudulent June 2025 financial statement. |
| 14 | 08/27/2025 | Email from MWANGI to FFB attaching a fraudulent July 2025 financial statement. |
| 15 | 09/16/2025 | Email from MWANGI to FFB attaching a fraudulent letter purporting to be from Charles Schwab. |

All in violation of Title 18, United States Code, Section 1343.

**Forfeiture**

31. Upon conviction of one or more of the offenses alleged in Counts One through Fifteen of this Indictment, the defendant, THOMAS MWANGI, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the offenses, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Fifteen of this Indictment.

32. If any property subject to forfeiture, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred to, sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property, which cannot be divided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

A True BILL

FOREPERSON

THEODORE S. HERTZBERG
*United States Attorney*

DWAYNE A. BROWN JR.
*Assistant United States Attorney*
Georgia Bar No. 509554

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303